NOT RECOMMENDED FOR PUBLICATION
File Name: 16a0276n.06

No. 15-3521

## UNITED STATES COURTS OF APPEALS
## FOR THE SIXTH CIRCUIT

WILLIAM L. MOORE, JR.,               )
                                      )
    Plaintiff-Appellant,          )
                                      )
v.                                    )
                                      )
AMPAC,                                )
                                      )
    Defendant-Appellee.           )

**FILED**
May 20, 2016
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO

**BEFORE: GUY, BATCHELDER, and COOK, Circuit Judges.**

**ALICE M. BATCHELDER, Circuit Judge.** William L. Moore sued his employer, AMPAC, claiming that he was terminated from his job in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and Ohio law. The district court granted summary judgment to AMPAC on all claims, holding that Moore had failed to establish a prima facie case of age discrimination, and that even assuming that Moore had established a prima facie case, Moore had failed to show that AMPAC's purported reason for firing him was pretextual. For the following reasons we AFFIRM the district court's order.

I.

Moore began working for AMPAC in 2003, when Innovation Packaging, Moore's previous employer, was acquired by AMPAC. AMPAC is a national retailer of packaging, flexible packaging, and shopping and security bags in the finance and retail industries. Throughout his career at AMPAC, Moore served as a nation-wide security sales representative

for AMPAC's security division products. In this capacity, Moore targeted national retailers and banks. AMPAC fired Moore, then aged 60, on May 4, 2012, for poor performance.

Sales in AMPAC's security sales division declined in 2010 due to the loss of several major accounts. The loss of those accounts resulted in a net loss of about five million dollars, which accounted for about fifteen percent of the security sales division's total revenue. AMPAC then hired a new Global Vice President of Security Sales, Sep Italiano, to whom Moore reported directly.

On August 11, 2011, Italiano and Ann Marie Braker, AMPAC's Director of Central Services, met with Moore and instituted a sales plan ("the 2012 sales plan" or "the plan"). According to AMPAC, both Moore and Greg Trass, a 49-year-old salesman with twenty years of experience, were subject to the terms of the 2012 sales plan because they were experienced security sales representatives involved in the same type of security sales.

The 2012 sales plan required that Moore and Trass each close at least two new accounts per month, each account with sales potential of greater than $25,000 annually. Under this plan only new accounts, defined as accounts with zero sales within the last three years, were credited towards the requirement. The plan did not credit expanded sales to existing clients and sales to former clients who had done business with AMPAC within the last three years.

Neither Moore nor Trass achieved the number of new sales required under the terms of the plan. However, in September 2011, Trass negotiated a sales agreement with Unisource McKesson worth about $760,000 in new business for AMPAC, a total dollar volume above that required for the year by the plan. AMPAC did not issue a written warning to Trass for his failure to reach the plan's new-accounts goals.

On November 28, 2011, Italiano and Braker issued Moore a written warning for his failure to achieve his sales goals. This warning reiterated that further failure to reach sales goals could result in his termination. On February 24, 2012, Braker and Italiano instituted another performance plan for Moore under which AMPAC gave Moore an additional sixty days to reach his sales targets or face dismissal. Moore again failed to meet his targets over the final sixty days of his employment. AMPAC fired Moore on May 4, 2012.

Moore filed his Complaint on September 18, 2013. The District Court granted summary judgment to AMPAC, and Moore timely filed a Notice of Appeal.

II.

We review de novo the district court's order granting summary judgment. *Hunter v. Valley View Local Sch.*, 579 F.3d 688, 690 (6th Cir. 2009). Summary judgment is proper only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The proper inquiry on appeal from a grant of summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). In reviewing a grant of summary judgment, the moving party's evidence "must be viewed in the light most favorable to the [nonmoving] party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). However, if the nonmoving party has failed to make a sufficient showing on an essential element of the case with respect to which it has the burden, the moving party is entitled to summary judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

The Age Discrimination in Employment Act of 1967 (ADEA) and Ohio law prohibit employers from making adverse employment decisions because of an employee's age. 29 U.S.C. § 623(a); Ohio Rev. Code § 4112.02(A). Moore's age discrimination claim brought under Ohio law is analyzed under the same standards applicable to his federal claims asserted pursuant to the ADEA. *Minadeo v. ICI Paints*, 398 F.3d 751, 763 (6th Cir. 2005).

Under the *McDonnell Douglas* burden-shifting framework, the plaintiff must establish a *prima facie* case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The plaintiff may establish a prima facie case by showing "(1) membership in a protected group; (2) qualification for the job in question; (3) an adverse employment action; and (4) circumstances that support an inference of discrimination." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002). The plaintiff can establish the fourth element by showing that a substantially younger person replaced the plaintiff, or by showing that similarly situated, non-protected employees were treated differently than the plaintiff. *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 521-22 (6th Cir. 2008).[1]

In order to demonstrate that an employee is similarly situated the plaintiff must "demonstrate that he or she is similarly-situated to the non-protected employee in all *relevant* respects." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 353 (6th Cir. 1998). Courts "should make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee." *Id.* at 352.

---

[1] In this case, Trass, Moore's comparator, was 49 years old at the time of Moore's termination. Because the ADEA protects employees over the age of 40, Trass and Moore are both in the protected group. This fact, however, does not undermine the inference of age discrimination that can be drawn from the disparate treatment against someone twelve years Trass's senior. *See O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996) ("Because the ADEA prohibits discrimination on the basis of age and not class membership, the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class.")

If the plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment decision. *Arendale v. City of Memphis*, 519 F.3d 587, 603 (6th Cir. 2008). If the employer meets this burden of production, then the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the legitimate, non-discriminatory reason given is a pretext for discrimination. *Id.*

A.

It is undisputed that Moore was over the age of forty, that he was qualified for his position, and that he was fired. The only element in dispute is whether Moore presented evidence of circumstances that support an inference of discrimination.

Moore argues that the fact that he was treated less favorably than Trass supports an inference of age discrimination because Trass was similarly situated and twelve years his junior. AMPAC's dissimilar treatment of Moore and Trass will support an inference of discrimination if the two employees were similarly situated. The district court held that Moore and Trass were not similarly situated employees at the time of Moore's termination because Trass had generated at least $760,000 in new business and Moore had generated significantly less.

Trass was substantially younger than Moore, both Moore and Trass were supervised by Italiano, and both were subject to the 2012 sales plan. Although Trass's bringing in new business might rise to the level of conduct that differentiates the two employees, we hold that Trass *was* a similarly situated employee because he was similarly situated to Moore in all relevant respects. *See Ercegovich*, 154 F.3d at 352; *see also Johnson v. The Kroger Co.*, 319 F.3d 858, 867 (6th Cir. 2003) ("In the context of personnel actions, the relevant factors for determining whether employees are similarly situated often include the employees' supervisors,

the standards that the employees had to meet, and the employees' conduct."). Most importantly here, Moore and Trass were placed on the same sales plan and both had failed to meet the plan's stated goals. That AMPAC chose to fire Moore but not Trass, the twelve-years-younger salesman, supports an inference that Moore was fired because of his age. We therefore hold that Moore has established a prima facie case of age discrimination.

B.

Because Moore established a prima facie case of age discrimination, it is AMPAC's burden to articulate a legitimate, non-discriminatory reason for the adverse employment decision. *Arendale*, 519 F.3d at 603. AMPAC argues that it fired Moore because he failed to meet the initial 2012 plan's goals or those of the subsequent plan which gave him an additional sixty days to comply. It is undisputed that Moore failed to meet the expectations of the sales plans.

Because AMPAC has articulated a legitimate non-discriminatory reason for terminating Moore's employment, the burden shifts back to Moore to prove by a preponderance of the evidence that this reason is a pretext for discrimination. *Arendale*, 519 F.3d at 603. To establish pretext, a plaintiff must show "either (1) that the proffered reasons had no basis *in fact*, (2) that the proffered reasons did not *actually* motivate [his] discharge, or (3) that they were *insufficient* to motivate discharge." *Russell v. Univ. of Toledo*, 537 F.3d 596, 604 (6th Cir. 2008) (quoting *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)).

Moore argues that AMPAC's reason for terminating him was merely a pretext for age discrimination. To support his claim he points to the fact that the plan's goals and requirements were not applied equally to Trass, a younger employee, and himself. He argues further that this

conclusion is supported by the fact that Trass was eventually released from the plan's requirements and those goals were eliminated a few months after Moore was fired.

Moore does not dispute that he failed to comply with the plan or that he was given a subsequent plan that provided that failure to comply would result in termination. Consequently, he does not argue that AMPAC's purported reason for terminating him had no basis in fact, or that his failure to comply with the plan was insufficient to motivate his discharge. Rather, his argument suggests that his failure to comply with the plan did not actually motivate his discharge because the plan itself was merely a pretext for age discrimination.

Moore has not demonstrated that AMPAC's sales plan was pretextual. While we reject AMPAC's argument that Trass was not similarly situated because he generated more new business, Trass's business performance does shield AMPAC from Moore's argument that the 2012 sales plan was a pretext for age discrimination. The record shows that while Trass was working under this plan, he negotiated *new* business worth about $760,000, a total that exceeded the dollar total the plan required him to generate. Although this new business was not, strictly speaking, in conformance with the plan's requirements, AMPAC's decision not to fire Trass after he had generated this significant new business does not support a claim that the plan was a pretext for age discrimination.

As further evidence that the 2012 sales plan was a pretext for age discrimination, Moore points to disparaging comments about older employees made by AMPAC's president, Tom Geyer. But as the district court explained, these comments do not prove pretext. *See, e.g., Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1025–26 (6th Cir. 1993) ("Age-related comments referring directly to the worker may support an inference of age discrimination. However, . . .

isolated and ambiguous comments are too abstract, in addition to being irrelevant and prejudicial, to support a finding of age discrimination." (internal quotation marks omitted)).

Moore has failed to prove by a preponderance of the evidence that AMPAC's terminating his employment for failure to comply with the 2012 sales plan was a pretext for age discrimination. It is undisputed that he failed to comply with either the original or the subsequent plan and that the subsequent plan explicitly provided that his failure to comply with it would be sufficient grounds for terminating his employment. We hold, therefore, that AMPAC's stated reason for firing Moore was not a pretext for age discrimination.

III.

For the foregoing reasons, we AFFIRM the judgment of the district court.